# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CH ASSOCIATES XI, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. N24C-09-260 FWW |
| 1102 WEST STREET, LP, | ) |
| GF MANAGEMENT, LLC, and | ) |
| individually and in her official capacity, | ) |
| HARRIETT CICCONE, | ) |
| | ) |
| Defendants. | ) |

Submitted: January 24, 2025
Decided: March 3, 2025

*Upon Defendant Harriett Ciccone's Motion to Dismiss Pursuant to Rule 12(b)(2)*
**DENIED.**

*Upon Defendant Harriett Ciccone's Motion to Dismiss Pursuant to Rule 12(b)(6)*
**GRANTED.**

*Upon Defendant 1102 West Street, LP's Motion to Dismiss Pursuant to Rule 12(b)(6)*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Scott G. Wilcox, Esquire, GIORDANO, DELCOLLO, WERB & GAGNE, LLC, 1007 N. Orange Street, Suite 446, Wilmington, DE 19801, Attorney for Plaintiff CH Associates XI, LLC.

Melissa N. Donimirski, Esquire, STEVENS & LEE, P.C., 919 N. Market Street, Suite 1300, Wilmington, DE 19801; Jason P. Rudloff, Esquire, STEVENS & LEE, P.C., 555 City Avenue Suite 1170, Bala Cynwood, PA 19004, Attorneys for Defendants 1102 West Street, LP and Harriett Ciccone.

**WHARTON, J.**

# I.    INTRODUCTION

Before the Court are Defendant Harriett Ciccone's ("Ciccone") Motions to Dismiss Pursuant to Rule 12(b)(2) and Rule 12(b)(6)[1] and Defendant 1102 West Street, LP's ("1102 West") Motion to Dismiss Pursuant to Rule 12(b)(6).[2] Plaintiff CH Associates XI, LLC ("CH Associates") has submitted Answering Briefs in Opposition to each.[3] The Defendants have replied.[4] For the reasons set out below, Ciccone's Motion to Dismiss Pursuant to Rule 12(b)(2) is **DENIED.** Her motion pursuant to Rule 12(b)(6) is **GRANTED.** 1102 West's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED.** Counts I and II of the Complaint against Ciccone are **DISMISSED with prejudice.** Count III against her is **DISMISSED without prejudice.** Counts I and III of the Complaint against 1102 West are **DISMISSED without prejudice.**

## II. FACTS AND PROCEDURAL HISTORY

On September 27, 2024, Plaintiff CH Associates brought claims for breach

---

[1] Def. Ciccone's Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 9.

[2] Def. 1102 West Street, LP's Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 10.

[3] Pl.'s Ans. Br. in Opp. to Def. Ciccone's Mot. to Dismiss Pursuant to Rule 12(b)(2), D.I. 22; Pl.'s Ans. Br. in Opp. to Def. Ciccone's Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 21; Pl.'s Ans. Br. in Opp. to Def. 1102 West Street, LP's Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 20.

[4] Def. Harriet Ciccone's Reply in Support of Mot. to Dismiss Pursuant to Rule 12(b)(2), D.I. 25; Def. Harriett Ciccone's Reply in Support of Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 26; Def. 1102 West Street, LP's Reply in Support of Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 24.

of contract and fraud in a three-count Complaint against 1102 West and Ciccone in connection with the purchase by CH Associates of a hotel located at 1102 West Street in Wilmington (the "Property").[5] The Complaint alleges that the Defendants breached the contract of sale by failing to correct deficiencies related to a fire pump[6] and by failing to adjust the purchase price based upon certain post-closing prorations for material counts and services.[7] The fraud count relates to alleged misrepresentations of facts regarding the fire pump.[8]

## III. CICCONE'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

### A. The Parties' Contentions.

Ciccone seeks to have the Complaint dismissed against her because this Court does not have personal jurisdiction over her. She presents two reasons. First, she claims CH Associates has alleged no jurisdictional facts against her.[9] Second, she argues that Delaware's long-arm statute does not authorize personal jurisdiction over her in light of the fiduciary shield doctrine.[10] In support of her position, she has attached to her motion, her Declaration.[11] In her Declaration, she represents

---

[5] Compl., D.I. 1.
[6] *Id.* at ¶¶ 25-33.
[7] *Id.* at ¶¶ 34-39.
[8] *Id.* at ¶¶ 40-51.
[9] Def. Ciccone's Op. Br. in Support of Mot. to Dismiss Pursuant to Rule 12(b)(2), at 3, D.I. 8.
[10] *Id.* at 4-6.
[11] *Id.* at Ex. B.

3

that: (1) she is a resident of Pennsylvania;[12] (2) she has never resided in Delaware;[13] (3) the only relevant contacts she has with Delaware pertain exclusively 1102 West's sale of the Property to Canon Hospitality Management, LLC, who assigned it rights to CH Associates;[14] and (4) any and all conduct she undertook regarding the negotiation or execution of the Purchase and Sale Agreement ("PSA"), the due diligence process, the closing, or in any other way with respect to the sale, were done on behalf of and in her role as the Vice president of Marcourt Inc. ("Marcourt"), a Pennsylvania corporation that is not a party to this litigation.[15] She concludes that not only has CH Associates not pled any jurisdictional facts against her but her status as an officer of Marcourt, but the fiduciary shield doctrine protects her from personal jurisdiction for acts done in her capacity as a corporate officer.[16]

CH Associates opposes the Motion. First, it argues the Complaint does allege jurisdictional facts.[17] It states that, "During the sale process, Defendants (including Mrs. Ciccone) misrepresented matters relating to the fire pump at the Property. The Defendants breached the contract and committed fraud in the Sale of the Property

---

[12] *Id.* at Ex. B, ⁋ 2.
[13] *Id.* at Ex. B, ⁋ 3.
[14] *Id.* at Ex. B, ⁋⁋ 1-10; Complaint at ⁋ 7, D.I. 1.
[15] *Id.* at B, ⁋⁋ 4-10; Ex. A, ⁋ 26.
[16] *Id.* at Ex. B, ⁋⁋ 4-5.
[17] Pl.'s Ans. Br. in Opp. to Def. Ciccone's Mot. to Dismiss Pursuant to Rule 12(b)(2), at 6, D.I. 22.

4

through several emails and statements."[18]  In CH Associates' view, this Court can exercise personal jurisdiction over all Defendants because the transaction occurred in Delaware and because the PSA, at paragraph 14.3, confers jurisdiction on Delaware.[19]  Second, CH Associates questions the scope and continuing viability of the fiduciary shield doctrine, citing a recent decision of this Court and an earlier one from the United States District Court for the District of Delaware.[20]  It also justifies personal jurisdiction over Ciccone because the Complaint alleges that she participated in a civil conspiracy to defraud it.[21]

Ciccone's Reply first notes that CH Associates simply "lumps [her] in with 1102 West Street LP, entirely failing to point to acts by her within the State of Delaware that would permit this Court to exercise long arm jurisdiction over her in the face of the fiduciary shield doctrine."[22]  It acknowledges that, while this Court has questioned the validity of the "broadest scope" of that doctrine in dicta,[23] nevertheless, the doctrine remains good law in Delaware.[24]  Here, according to

---

[18] *Id.* (internal citation omitted).
[19] *Id.*
[20] *Id.* at 6-7.
[21] *Id.* at 7-8.
[22] Def. Ciccone's Reply in Support of Mot. to Dismiss Pursuant to Rule 12(b)(2), at 1, D. I. 25
[23] *Id.* at 2 (citing *Tolliver v. Qlarant Quality Solutions, Inc.* 2022 WL 17097602, at *7 (Del. Super. Ct. Nov. 21, 2022)
[24] *Id.* (citing, *e.g., Marketing Products Management, LLC, v. HealthhandBeautyDirect.com, Inc.,* 2004 WL 249581, at *3 (Del. Super. Ct. Jan. 28, 2004); *Kelly v. McKesson HBOC, Inc.,* 2002 WL 88939, at * 17 (Del. Super.

Ciccone, the facts support application of the fiduciary shield doctrine – she was not a party to the PSA and was acting in her corporate capacity as Vice President of Marcourt, a non-party to this litigation, as is evident from the PSA.[25] Further, an allegation of civil conspiracy cannot be a basis for asserting personal jurisdiction because civil conspiracy was not pled in the Complaint.[26] Finally, the PSA provides no basis for personal jurisdiction because Ciccone was not a party to it.[27]

## B. Standard of Review

On a motion to dismiss pursuant to Superior Court Rule 12(b)(2) for lack of personal jurisdiction over a defendant, "A plaintiff bears the burden of showing a basis for a trial court's exercise of jurisdiction over a nonresident defendant."[28] "In ruling on a Rule 12(b)(2) motion, the Court may consider the pleadings, affidavits, and discovery of record."[29] The Court applies a two-pronged analysis, first considering whether Delaware's Long-Arm statute is applicable, and then determining whether subjecting the nonresident defendant to jurisdiction in

---

Ct. Jan. 17, 2002)).

[25] *Id.* at 3-4.

[26] *Id.* at 4-5.

[28] *Id.* at 5-6.

[28] *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.,* 871 A.2d 428, 437 (Del. 2005).

[29] *Economical Steel Building Technologies, LLC v. E. West Construction, Inc.*, 2020 WL 1866869, at *1 (Del. Super. Ct. Apr. 14, 2020) (quoting *Ryan v. Gifford,* 935 A.2d 258, 265 (Del. Ch. 2007)).

6

Delaware violates the Due Process clause of the Fourteenth Amendment.[30]

## C. Discussion

### 1. Jurisdictional Facts

Ciccone's first argument is that the Complaint simply fails to set out any basis at all for this Court to exercise personal jurisdiction over her. In fact, Ciccone's name appears only twice in the Complaint – first in the caption and second in the opening paragraph, "Plaintiff CH Associates XI, LLC ("CH Associates") bring this Complaint against Defendants 1102 West Street, LP, Harriet Ciccone based on the following allegations:"[31] No allegation in the Complaint specifically identifies who she is, what her relationship to any of the parties is, or what she in particular is alleged to have done. CH Associates argues that its allegations against the "Defendants" generically is sufficient to establish personal jurisdiction. The word "Defendants" is asked to bear the entire burden of establishing personal jurisdiction. Were the Complaint the only source of information the Court had about Ciccone,

---

[30] *Biomeme, Inc. v. McAnallen,* 2021 WL 5411094, at *2 (Del. Super. Nov. 10, 2021).

[31] Complaint at 1, D.I. 1. Although the caption lists a third defendant, GF Management, LLC, that entity is never mentioned by name in the body of the Complaint, nor does the opening paragraph identify it as a defendant against whom the Complaint is brought. The Praecipe requested long-arm service on GF Management, LLC (D.I. 1), and a writ was issued (D.I. 2), but no affidavit of service appears in the record.

that burden would have been too great. But, from Ciccone's motion under Rule 12(b)(2), the Court gets some notion who Ciccone is and how she fits into the sale of the Property.[32] She is the Vice-President of Marcourt, the General Partner in 1102 West and she signed the PSA in that capacity.[33]

## 2. The Fiduciary Shield Doctrine

Considering that additional information, the question now becomes whether the fiduciary shield doctrine protects Ciccone from this Court's personal jurisdiction. The doctrine first manifested itself in Delaware case law in *Plummer & Co. Realtors v. Crisafi.*[34] Prior to *Plummer*, no Delaware cases delt directly with the issue of personal jurisdiction over an individual acting in a fiduciary capacity.[35] To summarize the fiduciary shield doctrine, *Plummer* quoted the United States Court of Appeals for the Second Circuit in *Marine Midland Bank, N.A. v. Miller*:

> The teachings of the courts of this Circuit and of New York is that there is a dichotomy between the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts. [Citing cases.] These cases have recognized that if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct,

---

[32] Def. Ciccone's Op. Br. in Support of Mot. to Dismiss Pursuant to Rule 12(b)(2).
[33] *Id.* at Ex. A.
[34] 533 A.2d 1242 (Del. Super. Ct. 1987).
[35] *Id.* at 1246.

although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.[36]

In *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.*[37] the United States District Court for the District of Delaware raised a red flag as to the viability of the fiduciary shield doctrine. Based on evolving case law, it concluded "the Supreme Court of Delaware would not recognize the fiduciary shield as an absolute bar to personal jurisdiction over a corporate employee.[38]

Whether the District Court's prediction will prove true is unknown as the Delaware Supreme Court has not addressed the issue. In fact, since *Plummer*, very few cases, perhaps as few as seven, have even mentioned the doctrine in either this Court or the Court of Chancery. In none of them did the Court expressly uphold the fiduciary shield doctrine in the face of a direct challenge to its viability. In only one – *Marketing Products Management, LLC v. HealthandBeautyDirect.com, Inc.*[39] – did the Court identify it as a rationale for granting a motion to dismiss, and then,

---

[36] *Id.* (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981).
[37] 833 F.Supp 437 (D. Del. 1993).
[38] 833 F.Supp. 443.
[39] 2004 WL 249581, at *2-3 (Del. Super. Ct. Jan. 28, 2004)

only as one of several. Another, *Kelly v. McKesson HBOC, Inc.,*[40] cited it in a footnote as a second reason to decline personal jurisdiction. While the doctrine was mentioned in *Murphy v. Pentwater Capital Management, LP,*[41] it was cited only as an additional argument offered by defendants against personal jurisdiction. It appears the case was decided on long-arm statute grounds.[42] In *EBP Lifestyle Brands Holdings, Inc. v. Boulbain,*[43] the Court questioned whether the doctrine even existed in Delaware, but ultimately neither affirmed, nor rejected it in reaching its decision. Similarly, in *Tolliver v. Qlarant Quality Solutions, Inc,*[44] the Court noted a split of authority on the vitality of the fiduciary shield doctrine, but based its decision on other factors. Two other cases were more critical, rejecting its application. In *Sample v. Morgan,*[45] the Court refused to allow fiduciaries to use the fiduciary shield doctrine to protect themselves against allegations they abused their fiduciary duties. Instead, the Court assessed the question of personal jurisdiction under Delaware's long-arm statute – "Put simply, the use of § 3104 to serve the moving defendants is entirely consistent with the language and evident

---

[40] 2002 WL 88939, at n.70 (Del. Super. Ct. Jan. 17, 2002). "It would also seem that the fiduciary shield doctrine would prevent personal jurisdiction over Hawkins."
[41] 2017 WL 5068572, at *4 (Del. Super. Ct. Oct. 31, 2017).
[42] *Id*. at *5.
[43] 2017 WL 3328363, at *5 (Del. Ch. Aug. 4, 2017*)* ("With that said, I need not determine whether the fiduciary shield doctrine is (or ever was) Delaware law…")
[44] 2022 WL 17097602, at *7 (Del. Super. Ct. Nov. 21, 2022).
[45] 935 A.2d 1046, 1058-60 (Del. Ch. 2007).

purpose of the statute, and with precedent interpreting it."[46] Finally, the Court in *Metro Storage International LLC v. Harron,* took a similar approach analyzing the personal jurisdiction question under Delaware's long-arm statute, rather than applying the fiduciary shield doctrine, which it found to be in conflict with the statute.[47]

When viewed from the forgoing perspective, there appears to be very little support for the fiduciary shield doctrine. If it is not dead, it is at best on life support. Certainly its status as "good law" is in considerable doubt. Accordingly, the Court approaches the issue of whether Delaware has personal jurisdiction over Ciccone from the perspective of the legislatively created long-arm statute rather than the judicially created fiduciary shield doctrine.

### 3. The Long-Arm Statute

Delaware's long-arm statute identifies six scenarios in which Delaware Courts may exercise personal jurisdiction over a nonresident defendant. Those are that the nonresident:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;

---

[46] *Id.* at 1062.
[47] 2019 WL 328613, at *25. (Del. Ch. Jul. 19, 2019)

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[48]

The first step in the long-arm analysis is to identify, which, if any, scenarios under § 3104 are present here. CH Associates relies on § 3104(c)(1): "[A] court may exercise personal jurisdiction over any nonresident, or personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State…"[49] In her Declaration, Ciccone states that she executed the PSA, albeit as Vice President of Marcourt, the general partner of 1102 West and that she undertook acts and conduct with respect to the sale of the Property, "including, but not limited to the negotiation or execution of the PSA, the due diligence process, the closing, and other activities…"[50] The Court finds that

---

[48] 10 *Del. C.* § 3104(c).
[49] 10 *Del. C.* § 3104(c)(1).
[50] Def. Ciccone's Op. Br. in Support of Mot. to Dismiss Pursuant to Rule 12(b)(2),

Ciccone transacted business within the State.

The second step in the personal jurisdiction analysis is for the Court to determine if subjecting Ciccone to the jurisdiction of Delaware violates the Due Process Clause of the 14th Amendment. The United States Supreme Court has held that it is constitutionally permissible to exercise personal jurisdiction over a non-resident defendant when that defendant should have "reasonably anticipated ...that his...actions might result in the forum state exercising personal jurisdiction over him in order to adjudicate disputes arising from those actions."[51] To satisfy this test, the defendant need not have ever entered the forum state physically because the Supreme Court has rightly focused the test on the more relevant question of whether the defendant has engaged in such conduct directed toward the forum state that makes it reasonably foreseeable that conduct could give rise to claims against the defendant in the forum state's courts. Here, based on Ciccone's extensive involvement in the sale of the Property, she should have reasonably anticipated that Delaware would exercise personal jurisdiction over her if something went amiss.

## IV. CICCONE'S MOTION TO DISMISS PURSUANT TO Rule 12(b)(6)

### A. The Parties' Contentions

Ciccone also moves to dismiss pursuant to Rule 12(b)(6) for failure to state

---

Ex. B, at ¶¶ 9, 10, D.I. 8.

[51] *World Wide Volkswagen, Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

a claim upon which relief can be granted, both as to the breach of contract claims in Counts I and II, and as to the fraud claim in Count III.[52] Regarding the breach of contract claims, Ciccone's argument is simple – she was not a party to the PSA and may not be sued in her individual capacity for alleged breaches of it.[53] As to the fraud count, Ciccone argues that CH Associates has failed to plead any factual allegations against her.[54] Further, it has failed to identify who made the allegedly false statements, and, in particular, any false statement made by her.[55] Finally, Ciccone argues that the Complaint fails to allege that: (1) she was aware that any false statements were made; (2) she had knowledge of the allegedly false statements at issue; and (3) she intended to induce CH Associates to rely on any allegedly false statements.[56]

In its response, CH Associates acknowledges that Ciccone "properly challenges Counts I and II in the Complaint asserting claims of breach of contract against her."[57] It now asserts those two claims only against 1102 West.[58]

CH Associates does contest Ciccone's attempt to dismiss the fraud count,

---

[52] Def. Ciccone's Op. Br. in Support of Mot. to Dismiss Pursuant to Rule 12(b)(6), D.I. 9.
[53] *Id.* at 4.
[54] *Id.* at 6.
[55] *Id.*
[56] *Id.*
[57] Pl.'s Ans. Br. in Opp. to Def. Ciccone's Mot. to Dismiss Pursuant to Rule 12(b)(6), at 5, D.I. 21.
[58] *Id.*

however. It disputes her contention that the Complaint failed to identify the time, place, and contents of the false statements made by the Defendants, citing six such statements.[59] It also cites to paragraphs in the Complaint where it alleges that the false statements were made knowingly by the Defendants, intending to induce CH Associates to close on the Property, which it justifiably did in reliance on the inducements, and as a result suffered damages.[60]

In her Reply, Ciccone points out that CH Associates never specifically identified, either in its Complaint or in its Answering Brief the contents, time, place, or manner of any alleged misrepresentations by her specifically.[61] The Complaint fails to identify any misrepresentation Ciccone made, let alone any in her individual capacity, nor does it allege she was aware of any misrepresentations.[62]

## B. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[63] The Court's review is limited to the well-pled allegations in the complaint.[64] In ruling

---

[59] *Id.* at 6-7.
[60] *Id.* at 7-8.
[61] Def.. Ciccone's Reply in Support of Mot. to Dismiss Pursuant to Rule 12(b)(6), at 3, D.I. 26.
[62] *Id.* at 3-4.
[63] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[64] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[65] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[66] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[67] The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[68]

## C. Discussion

### 1. Counts I and II – Breach of Contract

CH Associates acknowledges that Ciccone properly challenges Counts I and II alleging breach of contract against her.

### 2. Fraud – Count III

The Court turns to Count III alleging fraud. Superior Court Civil Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[69] The particularity pleading

---

[65] *Id.*

[66] *Id.*

[67] *Ramunno v. Cawley,* 705 A.2d 1029, 10345 (Del. 1998).

[68] *Tigani v. C.I.P. Assocs., LLC,* 2020 WL 2037241, at v*2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).

[69] Super. Ct. Civ. R. 9(b).

16

standard requires a party to plead "the time, place and contents of the false representations."[70] However, "[m]alice, intent, knowledge, and other condition of a person may be averred generally."[71] The requirement that fraud be pleaded with particularity "serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude."[72] In order to survive a motion to dismiss a fraud claim, the party asserting fraud must allege that: (1) the accused party falsely represented a material fact or omitted facts that they had a duty to disclose; (2) the accused party knew that the representation was false or made with a reckless indifference to the truth; (3) the accused party intended to induce the party asserting the fraud action to act or refrain from action; (4) the party asserting the fraud acted in justifiable reliance on the representation; and (5) the party asserting the fraud was injured by its reliance on the accused party's representation.[73]

Here, the Complaint simply fails to identify the "accused party" when it alleges that person falsely represented facts, with knowledge the representations were false, intending to induce CH Associates to close on the Property. It is not

---

[70] *ITW Glob. Invs. Inc. v. Am. Indus. Partners Capital Fund IV, L.P.*, No. N14C-10-236, 2015 WL 3970908, at *5 (Del. Super. Ct. June 24, 2015).
[71] Super Ct. Civ. R. 9(b).
[72] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993).
[73] *ITW Glob. Invs. Inc.*, 2015 WL 3970908, at *5.

17

enough, in the Court's view, to allege that the Defendants generically did those things. Rule 9's particularity mandate requires more – CH Associates must distinguish between Ciccone and 1102 West when making its allegations. But even if it did not, Ciccone is entitled to know what she did individually. The Complaint fails to do that.

## V. 1102 WEST'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

### A. The Parties Contentions

In its motion under Rule 12(b)(6) 1102 West challenges Count I, breach of Contract, and Count III, fraud. It does not move to dismiss Count II relating to prorations. As to the breach of contract claim in Count I regarding the fire pump, it relies on the language of the PSA that the Property was being sold "As is and Where Is" and that "the Seller makes no representations or warranties as to the condition of the Premises or Assets, including without limitation, the operating condition of the equipment and other tangible property, or the fitness, suitability or merchantability of use, or otherwise."[74] Additionally, the PSA provides that it may not be amended or modified without the express signed written consent of both parties.[75] Because CH Associates neither alleged any breach of the PSA, nor any written modification of the PSA, 1102 West argues the Complaint fails to state a

---

[74] Def. 1102 West's Op. Br. in Support of Mot. to Dismiss Pursuant to Rule 12(b)(6), at 3 (quoting Ex. A, at §§ 3.1, 5.1.5, 5.5), D.I. 10.
[75] *Id.* at 4 (citing Ex. A, at § 14.1).

claim for breach of contract regarding the fire pump in Count I.[76]

Unlike Ciccone's motion, 1102 West's challenge to the fraud count is not based on Rule 9(b)'s particularity requirements. Instead, it argues that reliance by CH Associates on claimed misrepresentations is disclaimed in the PSA, making any reliance unreasonable and unjustified.[77] It again cites to the PSA, in which 1102 West acknowledges that it "DISCLAIMS ANY REPRESENTATIONS, WARRANTIES…PROMISES…OF ANY KIND OR CHARACTER…CONCERNING…THE CONDITION OF THE PROPERTY…" and that CH Associates "IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY THE SELLER…"[78] Further, 1102 West contends that CH Associates was in possession of a report concerning the fire pump during the due diligence period making it impossible for it to justifiably rely on misrepresentations concerning the report.[79]

CH Associates disagrees. First, regarding Count I, it agrees that the PSA states that the Property is being purchased "As is and Where is" and that 1102 made no representations or warranties as to the condition of the Property or assets.[80] But,

---

[76] *Id.*
[77] *Id.* at 5.
[78] *Id.* at 5-6 (citing Ex. A at §§ 3.1, 5.1.5, 5.5).
[79] *Id.* at 6.
[80] Pl.'s Ans. Br. in Opp. to 1102 West's Mot. to Dismiss Pursuant to Rule

it argues 1102 West is incorrect when it states that there were no written modifications to the PSA, pointing to an email where the Defendants represented that "BFPE will be out October 25th to correct all remaining issues."[81] When viewed in the light most favorable to CH Associates, CH Associates contends the email is evidence of the parties written modification of the PSA.[82] Therefore, the failure to make the repairs to the fire pump constituted a breach.

In support of the fraud count, CH Associates argues that the Complaint alleges all of the elements of common law fraud and that it was justified in reasonably relying on 1102 West's assurances that it would make the repairs identified in the fire pump report.[83] It argues that the representation to fix the fire pump occurred after the PSA was signed and that the representation amended the terms of the PSA.[84] It insists that there was no reasonable way it could have known that 1102 West never intended to make the promised repairs.[85] Finally, CH Associates finds "odd" 1102 West's argument that there could not have been any fraud because CH Associates was in possession of the fire pump report before closing. It is not withholding the report that it alleges constitutes fraud - it is the

12(b)(6), at 7, D.I. 20.
[81] *Id.* (Citing the Complaint at ℙ 10).
[82] *Id.* at 8.
[83] *Id.* at 8-9
[84] *Id.* at 10.
[85] *Id.* at 9.

false representation that the fire pump would be repaired that is fraudulent.[86]

In reply, 1102 West challenges the notion that "a single line in a vague cherry-picked email stating, 'BFPE will be out October 25 to correct all remaining issues' constated a valid amendment to the PSA, especially in light of the fact that the Complaint did not allege that there had been written modification of the PSA.[87] Because the PSA was never effectively modified to require 1102 West to replace the fire pump, the Complaint fails to state a claim for breach of contract.[88]

1102 West highlights what it considers to be a fatal contradiction in CH Associates fraud allegation. CH Associates alleges that it closed on the Property without requiring replacement of the fire pump because 1102 West represented that there was: (1) no report indicating the pump needed to be replaced; and (2) no need to replace the pump.[89] But, CH Associates also alleged that it was in possession of a report stating the pump did need to be replaced prior to closing.[90] Since CH Associates already had the report, it was unreasonable as a matter of law for it to rely of any statements from 1102 West that no such report existed or that the fire pump did not need to be replaced.

---

[86] *Id.* at 10.
[87] Pl.'s Reply in Support of Mot. to dismiss Pursuant to Rule 12(b)(6), at 1-2, D.I. 24.
[88] *Id.* at 3.
[89] *Id.* at 4 (citing the Complaint at ¶¶ 46-48).
[90] *Id.* (citing the Complaint at ¶¶ 10, 42).

**B. Standard and Scope of Review**

The Standard and Scope of Review the Court applies here is set out in Section IV. B, *supra*.

**C. Discussion**

**1. Breach of Contract – Count I**

The crux of this issue is whether the PSA was effectively modified in writing. There is no dispute that the PSA provides that the Property is sold "As is Where is" and that 1102 West "makes no representations or warranties as to the condition of the Premises or Assets, including without limitation, the operating condition of the equipment and other tangible property, or the fitness, suitability or merchantability of use or otherwise."[91] Similarly, there is no dispute that the PSA also provides it is the entire agreement between the parties and may not be amended or modified without the express signed written consent of both parties.[92] Therefore, in order to state a claim for breach of contract, the Complaint must allege that there is a signed written agreement between the parties to modify the PSA to require 1102 West to replace the fire pump. Only then would the failure to do so by 1102 West form the basis of a breach of contract claim. A careful reading of the Complaint shows that it makes no allegation the PSA ever was modified. Further, the Complaint does not

---

[91] Def. 1102 West's Mot. to Dismiss Pursuant to Rule 12(b)(6), Ex. A, (quoting §§ 3.1,5,1.5, 5.5).

[92] *Id.* (citing Ex. A, at § 14.1).

allege in ¶ 10 that the representation that "BFPE will be out October 25th to correct all remaining issues" was in writing, signed by the parties, or that it modified the PSA.[93] Instead, five paragraphs later it alleges that "CH Associated reminded Defendants of the email where it said BPFE would be correcting all remaining items on October 23, 2023."[94] It is impossible for the Court to know the context of that statement, because although integral to the Complaint, it was not an exhibit to it. But, what is clear is that the quoted portion of the email does not state that it is intended to modify the PSA. The Court finds these oblique references insufficient to constitute an allegation that the PSA was modified by the signed written consent of the parties. Accordingly Count I fails to state a claim for breach of contract.

### 2. Fraud

In order to survive a motion to dismiss a fraud claim, the party asserting fraud must allege that: (1) the accused party falsely represented a material fact or omitted facts that they had a duty to disclose; (2) the accused party knew that the representation was false or made with a reckless indifference to the truth; (3) the accused party intended to induce the party asserting the fraud action to act or refrain from action; (4) the party asserting the fraud acted in justifiable reliance on the representation; and (5) the party asserting the fraud was injured by its reliance on

---

[93] Complaint, at ¶ 10, D.I.1.
[94] *Id.* at ¶ 15.

the accused party's representation.[95]

The element of fraud at issue here, as identified by 1102 West, is whether CH Associates' reliance on 1102 West's alleged misrepresentations concerning the fire pump was reasonable.[96] Again, 1102 West relies on the language of the PSA to support its position. In the PSA, 1102 West disclaims any representations or promises concerning the condition of the Property and CH Associates agreed that it was relying on its own investigation of the Property and not on any information provided by 1102 West or to be provided by 1102 West.[97] Significantly, prior to closing, during the due diligence period, 1102 West provided CH Associates with a report stating, "FIRE PUMP IN NEED OF MAJOR OVERHAUL" at a cost of $98,735.00.[98]

The issue for the Court then, is whether in the face of the unmodified language of the PSA,[99] and with knowledge of the fire pump report, whether CH Associates' reliance on 1102 West's representations was justifiable. The Court finds it was not. When it signed the PSA, CH Associates was aware of that 1102 West disclaimed any promises about the condition of the Property and that it was

---

[95] *ITW Glob. Investments Inc.*, 2015 WL 3970908, at *5.
[96] Unlike Ciccone, 1102 West does not make any argument for dismissal predicated on Rule 9(b). The Court declines to delve into that issue *sua sponte*.
[97] Def. 1102 West's Op. Br. in Support of Mot. to Dismiss Pursuant Rule 12(b)(6) (citing Ex. A, at §§ 3.1, 5.1.5, 5.5), D.I. 10.
[98] Complaint, at ⁋⁋ 2, 10.
[99] *See,* § IV. C. 1, *supra.*

24

relying on its own investigation of the Property. Further, prior to closing, it was aware that the fire pump needed major overhauling at a cost of $98,35.00. Yet, it proceeded to closing doing exactly what the PSA proscribed – it relied on 1102 West's promises and failed to do its own investigation. Certainly, an investigation would have revealed that the fire pump was not replaced. Finally, CH Associates describes itself as being "in the business of owning and managing hotels throughout the East Coast."[100] It does not appear to be a novice in these matters. "[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim."[101]

THEREFORE, for the reasons set out above, Defendant Harriet Ciccone's Motion to Dismiss Pursuant to Rule 12(b)(2) is **DENIED.** Her Motion to Dismiss Pursuant to Rule 12(b)(6) is **GRANTED.** Defendant 1102 West Street LP's Motion to Dismiss Pursuant to Rule 12(b)(6) is **GRANTED** as to Count I alleging breach of contract and as to Count III alleging fraud. Counts I and II of the Complaint alleging breach of contract against Defendant Harriet Ciccone are **DISMISSED with prejudice.** Count III of the Complaint alleging fraud against

---

[100] Complaint, at ⁋ 1, D.I. 1.
[101] *Abry Partners V, L.P. v F & W Acquisition LLC, 891 nA.2d 1032, 1057 (Del. Ch. 2006).*

25

Defendant Harriet Ciccone is **DISMISSED without prejudice.** Count 1 of the Complaint alleging breach of contract and Count III alleging fraud against Defendant 1102 West Street, LP are **DISMISSED without prejudice.**

Plaintiff CH Associates XI, LLC shall have 30 days from the date of this Memorandum Opinion and Order to filed an Amended Complaint.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.